UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

INDIANA MILLS & MANUFACTURING, )
INC., )
                                                           )
        Plaintiff, )
                                                           )
    vs. )          1:04-CV-540-SEB-VSS
                                                           )
EVENFLO COMPANY, INC., )
                                                           )
        Defendant. )

**ENTRY DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

      This matter is before the Court on Plaintiff Indiana Mills & Manufacturing, Inc.'s ("IMMI") and Defendant Evenflo Company, Inc.'s ("Evenflo") Cross-Motions for Summary Judgment on all of IMMI's claims related to an alleged breach of contract by Evenflo. In 1990, IMMI and Evenflo entered a patent license agreement (the "Contract") requiring Evenflo to make an accounting and to pay royalties to IMMI on an annual basis for certain products (the "Licensed Products"). This case involves a dispute between the parties over the proper interpretation of the Contract's royalty provisions. IMMI contends that Evenflo owes royalties pursuant to the Contract. Evenflo contends that it does not. Evenflo asserts that IMMI's claim for royalties for the year 1993 is barred by the Indiana statute of limitations and IMMI's claims for royalties for years post-2000 are barred by the equitable doctrine of laches.

As explained below, we DENY Plaintiff's and Defendant's Cross-Motions for Summary Judgment as to the interpretation of the Contract; GRANT Defendant's Motion for Summary Judgment as to the Indiana statute of limitations barring IMMI's claim for alleged royalties for the year 1993; and DENY Defendant's Motion for Summary Judgment as to the doctrine of laches barring IMMI's claims for alleged royalties for the years post-2000.

## Factual Background

The underlying dispute involves the interpretation of a patent license agreement (the "Contract"), Ex. C to Def.'s Brief in Supp., between Plaintiff Indiana Mills & Manufacturing, Inc. ("IMMI") and Defendant Evenflo Company, Inc. ("Evenflo") in relation to royalties to be paid under that agreement. IMMI, an Indiana corporation with its principal place of business in Westerfield, Indiana, Compl. ¶ 1, manufactures buckles and restraint adjuster systems.[1] Def.'s Brief in Supp. at 1. Evenflo, a manufacturer of child restraint systems (or child safety seats) and other juvenile products, has incorporated IMMI's buckles and restraint adjuster systems into some of these child restraint systems, while also internally producing its own restraint adjuster system. Id. at 1, 3.

In 1990, a dispute arose between the parties with regard to Evenflo's internal production of a restraint adjuster system which IMMI alleged was in violation of IMMI's registered patents for a similar system (the "A-Lok" adjuster system). Id. at 1–3. To end that dispute, the parties executed the Contract on or about December 26, 1990, whereby

---

[1] According to Evenflo, a "restraint adjuster system" is "used to adjust the internal harness commonly found on child car seats." Def.'s Brief in Supp. at 1–2.

IMMI would sell to Evenflo "A-Lok" adjuster systems at a fixed price in exchange for a license for Evenflo to produce its own restraint adjuster system.[2]  Id. at 2.  For each Licensed Product[3] sold by Evenflo within the United States, a royalty was to be paid, but such royalties were waived based upon the number of "A-Lok" systems purchased by Evenflo.  Id. at 3.  The agreement to pay royalties, see Ex. C. to Def.'s Brief in Supp., was for a term commencing January 1, 1991, and ending at the expiration of the last patent covered by the agreement,[4] which apparently expires at the end of 2005.  See Pl.'s Brief in Supp. at 3.   Ex. C. to Def.'s Mem.  The relevant portions of the Contract are as follows:

> 1.) IMMI grants patent license to Evenflo Juvenile Furniture Company, division of Spalding & Evenflo Companies, Inc. to manufacture and sell a single adjust point, front end adjuster system as currently being supplied by Evenflo on the Champion Car Seat and any other adjuster system covered by one or more claims in U.S. Patent Nos. 4,660,889 and D.285,383 in any Evenflo assembly (Licensed Product).
>
> 2.) Evenflo shall pay IMMI a royalty of seventy cents ($0.70) per Licensed Product sold in the United States, for each Licensed Product manufactured in the United States and shipped outside the United States, and for components of the Licensed Product supplied by or for Evenflo from the

---

[2] Evenflo utilized A-Lok adjuster systems in all its Ultara, Secure Advantage, Town & Country, and Medallion child safety seats, while it utilized its own such system in all its Champion, Secure Choice, Trooper, Conquest, Horizon, Odyssey, Titan, Vanguard, Tribute, and Victory child safety seats.  Def.'s Brief in Supp. at 4 (citing App. B, Kiser Aff., ¶ 5).

[3] Paragraph 1 of the Licensing Agreement defines "Licensed Product" as any Evenflo assembly utilizing any IMMI adjust system covered by one or more claims in U.S. Patent Nos. 4,660,889 and D.285,383.  Ex. C to Def.'s Brief in Supp. at ¶ 1.

[4] The Licensing Agreement references U.S. Patent Nos. 4,660,889 (the "'889 patent") and D.285,383 (the "'383 patent").  Ex. C to Def.'s Brief in Supp. at ¶ 1.  According to the complaint, the term of the Licensing Agreement would end at the expiration of the '889 patent.  Compl. ¶ 11.

>United States that are intended to be assembled outside the United States as a Licensed Product.
>
>\* \* \* \* \*
>
>5.)  Beginning January 1, 1991, IMMI will waive payment of royalties for two of the Licensed Product sold by Evenflo for each one A-Lok adjuster system purchased by Evenflo from IMMI.
>
>\* \* \* \* \*
>
>7.)  Evenflo agrees to file a report with IMMI indicating the number of the Licensed Product sold from January 1 to December 31 of each calendar year. The reports will be filed within 30 days after the end of the period reported and will be accompanied by a payment of any monies due Indiana Mills under the terms of this license agreement.

Ex. C to Def.'s Brief in Supp. at ¶¶ 1, 2, 5 and 7. The Contract was apparently prepared by an IMMI employee. Pl.'s Reply Brief at 5.

Evenflo filed reports under the Contract on January 30, 1992, February 16, 1993, and February 13, 1995, which provided accounting information for calendar years 1991,[5]

---

[5] The 1991 Report states, in relevant part:

>Per the agreement we have with you dealing with the A-Lok adjuster, I am submitting the following confidential information.
>
>During calendar 1991 our production of Ultaras, company-wide, 'was 171,358 units. Our production of the Champion car seat was 335,812 units. Our agreement permits a 2 to 1 usage of champions to Ultaras before the licensing fee of 70 cents per unit is activated. Although the numbers were very close, we did not quite exceed the 2 to 1 ratio, therefore, the 70 cents per unit would not pertain for calendar 1991. It may be note worthy that the Ultara is selling very well and it will be interesting to see where the production will go to in calendar 1992.

Ex. C to Pl.'s Brief in Supp. of Mot. to Dismiss Def.'s Countercls.

1992,[6] and 1994,[7] respectively. Pl.'s Brief in Supp. at 3–4. Prior to IMMI initiating this litigation, Evenflo had not provided such reports with regard to calendar years 1993, 1995–1999, and 2003. Compl. ¶ 14. There is no evidence that IMMI made timely requests for Evenflo to file reports for the years 1993, or 1995-1999 prior to the initiation of this litigation. In July or October 2002, IMMI requested Evenflo provide reports for the years 2000 and 2001, these reports were provided on October 29, 2002. See Ex. 2 to Pl.'s Reply Brief at 7.

From the years 1991 through 2000, with the exception of 1993, both parties agree that Evenflo purchased sufficient numbers of "A-Lok" systems from IMMI to completely offset any royalty payments that would have been due under the Contract. See Ex. 1 to Pl.'s Reply Brief. For the years 1993, and 2001 through 2004, both parties agree that Evenflo did not purchase sufficient numbers of "A-Lok" systems each year to completely

---

[6] The 1992 Report states, in relevant part:

> Per the agreement we have with you dealing with the A-Lok adjuster, I am submitting the following confidential information.
>
> During calendar 1992 our production of Ultaras, company-wide, was 236,534 units. Our production of the Champion car seat was k13,268 units. Cur [sic] agreement permits a 2 to 1 usage of Champions to Ultaras before the licensing fee of 70 cents per unit is activated. Since we did not exceed the 2 to 1 ratio, the 70 cents per unit would not pertain for calendar 1992.

Ex. D to Pl.'s Brief in Supp. of Mot. to Dismiss Def.'s Countercls.

[7] The 1994 Report states: "Attached is the 1994 Evenflo sales performance for Champion and Ultara car seats. Per paragraph 5 of our Agreement, it appears that no monies are due IMI [sic]. largely." Ex. E to Pl.'s Brief in Supp. of Mot. to Dismiss Def.'s Countercls. The 1994 Report attaches a spread sheet with monthly production tallies for 1994. The final tally is 513,147 Champion car seats and 331,525 Ultara car seats.

offset the number of Licensed Products sold by Evenflo in that respective year.  See Id.

IMMI contends that the Contract requires Evenflo to account for royalty payments on an annual basis with no allowance for unused credits to carry-over to subsequent years and that, under those terms, Evenflo failed to pay royalties due to IMMI.  Under IMMI's calculation Evenflo owes royalty payments of $37,198 for the year 1993 and $1,004,562 for the years 2001 through 2004.[8]  Ex. 1 to Pl.'s Brief in Supp.  Evenflo, on the other hand, contends that the Contract allows Evenflo to carry-over unused credits into subsequent years and, under these terms, Evenflo does not owe IMMI any royalty payments.  Evenflo also argues that under its interpretation of the Contract, Evenflo has accumulated more than 2,300,000 "waiver credits" which can be applied to offset future royalty payments.  App. E to Def.'s Brief in Supp. (accounting of the number of credits accumulated throughout the term of the Contract through 2004).

Evenflo contends that IMMI's claim for alleged royalties for the year 1993 is barred by the Indiana statute of limitations.  Evenflo further asserts that, because IMMI failed to timely request an annual report for the year 1993, IMMI's claims for alleged royalties for the years post-2000 are barred by the doctrine of laches.

Legal Analysis

(A)     *Summary Judgment Standard.*

On a motion for summary judgment, the burden rests on the moving party to demonstrate "that there is an absence of evidence to support the nonmoving party's case."

---

[8] There has not yet been a calculation for the year 2005.

Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  After the moving party demonstrates the absence of a genuine issue for trial, the responsibility shifts to the non-movant to "go beyond the pleadings" and point to evidence of a genuine factual dispute precluding summary judgment.  Id. at 322-23.  "If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court must enter summary judgment against her."  Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994), citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Celotex, 477 U.S. at 322-24; Anderson, 477 U.S. at 249-52.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes.  Waldridge, 24 F.3d at 290. Therefore, in considering a motion for summary judgment, we draw all reasonable inferences in favor of the non-movant.  Venters v. City of Delphi, 123 F.3d 956, 962 (7th Cir. 1997).  If genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate.  See Shields Enters., Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989).  But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. See Celotex, 477 U.S. at 322; Waldridge, 24 F.3d at 920.  A plaintiff's self-serving statements, unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment.  Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001); Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993).

(B)    *The Contract Is Ambiguous.*

The parties' central dispute revoles around whether the Contract permits Evenflo to carry-over unused credits from year-to-year. Both parties' primary contention is that the Contract is unambiguous and a clear reading of the Contract supports its respective position. IMMI contends that the Contract unambiguously requires Evenflo to account for royalty payments on an *annual* basis, which excludes the possibility of carrying-over unused credits to subsequent years.[9] Evenflo counters that the Contract unambiguously provides it a two-for-one royalty credit and no where in the Contract is there a provision indicating such credits expire at the end of the year.[10] Both parties expend considerable

---

[9] IMMI asserts:

> The Contract specifies when royalties shall be calculated and paid: it requires Evenflo to make an accounting and to pay royalties to IMMI on an annual basis. . . . Further, the Contract specifies how the royalties shall be calculated: it provides that IMMI will waive payment of royalties for two Licensed Products for each A-Lok adjuster system purchased by Evenflo from IMMI . . . . Taken together, these provisions unambiguously require calculation and payment of royalties . . . on an annual basis. . . . This is the only commercially reasonable interpretation that is consistent with the plain language of all of the Contract's royalty provisions.

Pl.'s Brief in Supp. at 2.

[10] Evenflo maintains that

> [The Contract] states that "Beginning January 1, 1991, IMMI will waive payment of royalties for two of the Licensed Product sold by Evenflo for each one A-Lok adjuster system purchased by Evenflo from IMMI." (Agreement, ¶ 5). According to this contractual provision, Evenflo was allowed to sell two licensed products royalty free for each A-Lok it purchased from IMMI. What is notable is what is absent from the agreement: a penalty provision that unused royalty waiver rights expire each year.

(continued...)

effort arguing that their respective interpretation is the only commercially/legally/logically reasonable reading of the Contract, while the other party's interpretation is clearly unreasonable.[11]

The stringent convictions of opposing counsel notwithstanding, the Contract does not directly address whether unused credits carry-over to ensuing years. While Evenflo is certainly correct that the contract does not contain a provision causing credits to expire at the end of the year, IMMI is equally correct that the Contract requires royalty payments be calculated on an annual basis. However, neither of these Contract provisions directly and definitively resolves the question of how unused credits should be treated at the end of a year. Indeed, neither party cites a Contract provision that definitively answers this question because the simple fact is that the Contract omits any reference to what happens

---

[10](...continued)
Def.'s Brief in Supp. at 7. Evenflo further argues it owes no royalties since "the agreement did not require that credits be used in the same year earned, or that credits are forfeited at the end of each year." Id. at 8.

[11] For example, IMMI argues if unused credit can be applied retroactively any royalty payment would be rendered conditional on no unused credits arising in subsequent years, and that this situation:

> would make it impossible to calculate any royalties owed by Evenflo on the 1990 Contract until the end of 2005, when the Contract expires. The plain language of the Contract is not susceptible to Evenflo's commercially unreasonable interpretation, as a matter of law.

Pl.'s Brief in Supp. at 3. Evenflo counters:

> IMMI's interpretation -- that payment is waived for two products sold in a calendar year for each one adjuster purchased in a calendar year -- simply has no basis in the text of Paragraph 5. IMMI is thus asking this Court to add a calendar year limitation to Paragraph 5 that does not exist.

Def.'s Reply Brief at 6.

to unused credits at the end of the year.

Because the Contract is subject to multiple, reasonable interpretations as to the treatment of unused credits, it is ambiguous.  Each party can and does point to separate provisions of the Contract which arguably support its interpretation and each party has plausible legal theories to support its respective interpretation.  Thus, we cannot say as a matter of law that either party's proffered contract interpretation is wholly unreasonable.[12] Since we conclude there are, at least, two plausible interpretations the treatment of unused credits, under Indiana law, the Contract is ambiguous.  Chicago Southshore & South Bend R.R. v. Itel Rail Corp., 658 N.E.2d 624, 633 (Ind. App. 1995) (explaining: "A contract is ambiguous if reasonable people would find the contract subject to more than one interpretation.") (citing Radio Picture Show Partnership v. Exclusive Intern. Pictures, Inc., 482 N.E.2d 1159, 1167 (Ind. App. 1985)).

(C)     *The Ambiguity Is a Latent Ambiguity.*

Having determined the Contract is ambiguous, we must now determine whether the ambiguity is patent or latent.  Evenflo contends that any ambiguity in the Contract is patent and thus can be resolved by a careful reading of the Contract and strict interpretation against its drafter, IMMI.  IMMI maintains that the Court should consider extrinsic evidence in helping to interpret the contract (essentially arguing the ambiguity is latent).

---

[12] Given the relative simplicity of the contract and the fact that it does not cover, in excruciating detail, possible contingencies, it is not surprising that there would be multiple reasonable interpretations of its terms when a dispute arose.

We have previously explained the difference between patent and latent ambiguities as follows:

> "[A]n ambiguity is patent when it 'can be cleared up by a careful reading' of the contract, or where 'the only reasonable inference is that the parties failed to reach agreement.' " Superbird Farms, Inc. v. Perdue Farms, Inc., 970 F.2d 238, 244 (7th Cir. 1992), citing, Amoco Oil Co. v. Ashcraft, 791 F.2d 519, 521 (7th Cir. 1986). A latent ambiguity may be explained by extrinsic evidence but a patent ambiguity may not. "If the contract is clear on its face but does not clearly resolve the specific contingency that has arisen, maybe because no one thought of the contingency when the contract was drafted, the court will admit evidence to show how the parties would have dealt with the contingency had they made specific provision for it." Amoco Oil, 791 F.2d at 521; see also Trustees of First Union Real Estate v. Mandell, 987 F.2d 1286, 1290 (7th Cir. 1993).

American Nat. Fire Ins. Co. v. Rose Acre Farms, Inc., 846 F.Supp. 731, 735 (S.D. Ind. 1994) (Barker, C.J.). The Seventh Circuit has further explained that:

> the concept of "patent" ambiguity is actually used in two different senses: where an ambiguity apparent on the face of the contract, which is to say apparent even to the reader who knows nothing about the background or circumstances of the contract, can be cleared up by a careful reading; and where the contract is (again on its face) so inconsistent, incoherent, or incomplete that the only reasonable inference is that the parties failed to reach agreement, in which event the contract fails for indefiniteness, and is not enforced. See Hauck v. Second Nat'l Bank, 286 N.E.2d 852, 862 (Ind. App. 1972).

Amoco Oil, 791 F.2d at 521.[13]

We conclude that the ambiguity in the Contract is a latent one which merely fails

---

[13] There has not been any suggestion from either party that the ambiguity in the Contract is of the latter type, i.e. that the Contract is so incomplete that "the only reasonable inference is that the parties failed to reach agreement." Since both parties agree that there was an agreement, and their conduct over more than a decade substantiates that conclusion, we decline to explore the failure for indefiniteness line of analysis.

to resolve the contingency of applying unused credits in subsequent (or previous) years. The Contract is clear on its face as long as the parties' relative positions remain the same over the life of the Contract. For example, if Evenflo had continued to purchase sufficient numbers of IMMI "A-Lok" adjuster systems to completely offset its royalty payments each year, the issue of carrying-over unused credits would never have arisen and the Contract would not have been ambiguous. Conversely, if Evenflo had never purchased sufficient numbers of "A-Lok" adjuster system to completely offset its royalty payments, the issue of carrying-over unused credits would also never have arisen and, thus, there would have been no ambiguity. The Contract is only ambiguous when its otherwise clear language is applied to these specific situations creating, in other words, a latent ambiguity.

As a result, the most reasonable interpretation of the Contract is that at the time of drafting, the parties did not envision a situation where Evenflo's purchases of the "A-Lok" adjuster system would dramatically change. Indeed, the ambiguity regarding unused credits only arose as a point of conflict after Evenflo's utilization the "A-Lok" adjuster system began to dramatically decline in 2001, more eleven years after the contract was signed. Regardless of whether it should have been foreseeable that the parties' relative positions might change over the course of fifteen years, it appears this contingency was not addressed at the time the Contract was drafted. Accordingly, we conclude the ambiguity is latent and, therefore, extrinsic evidence can be introduced to clarify the parties' interpretations for dealing with the issue of carrying-over unused

credits had they made specific provision for it.[14]

    (D)    *Extrinsic Evidence Is a Question of Fact for the Jury.*

Having determined that the Contract ambiguity is a latent ambiguity, under Indiana law the parties care permitted to adduce extrinsic evidence "to show how [they] would have dealt with the contingency had they made specific provision for it." American Nat. Fire Ins. Co. v. Rose Acre Farms, Inc., 846 F.Supp. 731, 735 (S.D. Ind. 1994) (Barker, C.J.) (citing Amoco Oil, 791 F.2d at 521; Trustees of First Union Real Estate v. Mandell, 987 F.2d 1286, 1290 (7th Cir. 1993)). Such evidence includes the annual reports filed by Evenflo for the years 1991, 1992, and 1994, and Evenflo's failure to file a report for the year 1993.

The parties disagree on the meaning of the three reports filed by Evenflo as well as its failure to file a report in 1993; however, their disagreement is not a resolvable dispute on summary judgment since, under Indiana law, "Where the terms of a contract are ambiguous and must be determined by extrinsic evidence, construction of the contract is for the jury." English Coal Co., Inc. v. Durcholz, 422 N.E.2d 302, 308-09 (Ind. App. 1981) (citing Brumfield, Tr. v. State ex rel. Wallace, 206 Ind. 647 (1934)); see also Woodbridge Place Apartments v. Washington Square Capital, Inc., 965 F.2d 1429, 1439

---

[14] Evenflo argues that the ambiguity is patent since: "The possible ambiguity is discernible from the face of the contract and arises from the very words used in the contract, which do not expressly indicate whether the two-for-one approach was meant to govern the entire contract period or individual calendar years." Def.'s Reply Brief at 15. Evenflo, however, is conflating the two types of ambiguity. While it is true that the ambiguity can be discerned from the face of the Contract, said ambiguity only arises in the context of specific situations. Thus, the Contract's ambiguity would not be apparent on its face to a reader who is not acquainted with the specific circumstances of the contract and, therefore, it is not a patent ambiguity.

(7th Cir. 1992) (holding " 'the intention of the parties is a question of fact and resort to extrinsic evidence is proper.' " (quoting Anderson v. Horizon Homes, Inc., 644 N.E.2d 1281, 1290 (Ind. App. 1995))); Chicago Southshore & South Bend R.R. v. Itel Rail Corp., 658 N.E.2d 624, 633 (Ind. App. 1995) (same).  Accordingly, we hold that the issue of the parties' intention for dealing with the issue of unused credits should be submitted to a jury and, thus, both parties' Motions for Summary Judgment on the issue of contract interpretation are denied.

   (E) *The Indiana Statute of Limitations Bars IMMI's Claim from 1993*.

  Evenflo contends that IMMI's royalty claim for the year 1993 is barred by the Indiana statute of limitations.  Indiana Code § 34-11-2-11 provides:

> An action upon contracts in writing other than those for the payment of money, and including all mortgages other than chattel mortgages, deeds of trust, judgments of courts of record, and for the recovery of the possession of real estate, must be commenced within ten (10) years after the cause of action accrues. However, an action upon contracts in writing other than those for the payment of money entered into before September 1, 1982, not including chattel mortgages, deeds of trust, judgments of courts of record, or for the recovery of the possession of real estate, must be commenced within twenty (20) years after the cause of action accrues.

Under Indiana law, IMMI's claim for the 1993 royalties accrued, and the statute of limitations began to run, when IMMI " 'knew, or in the exercise of ordinary diligence, could have discovered,' that [they] had been damaged by [Evenflo's] breach of . . . contract." Habig v. Bruning, 613 N.E.2d 61, 65 (Ind. App. 1993).  Had IMMI exercised ordinary diligence and requested an annual report for the year 1993 it would have discovered that, under IMMI's interpretation, Evenflo had breached the Contract by

failing to make royalty payments.  Thus, IMMI's cause of action for the alleged 1993 royalty payments accrued when IMMI could have discovered the alleged breach of contract.  This discovery could have occurred shortly after the January 30, 1994, deadline for Evenflo to file the 1993 report.  IMMI filed this action on March 23, 2004–ten years and almost two months after it could have discovered the alleged 1993 breach of contract.  Accordingly, we conclude IMMI's claim regarding alleged 1993 royalty payments is barred by the Indiana statute of limitations.

     (F)    *The Doctrine of Laches Does Not Bar IMMI's Post-2000 Claims*.

Evenflo contends that IMMI's post-2000 year claims are barred by the doctrine of laches.  Evenflo argues:

> In any case, if IMMI had been properly vigilant, and had not slept on its rights back in the early 1990's, this dispute would have come to a head more than a decade ago. That is, if IMMI had insisted on receiving the annual report for 1993, as it should have, IMMI would have seen that Evenflo exceeded the 2:1 ratio in that year and demanded payment from Evenflo. This dispute would have been resolved, one way or another, long ago.

Def.'s Reply Brief at 19.

"Laches is based on the legal maxim that equity aids the vigilant, not those who slumber on their rights." Hellyer Communications, Inc. v. WRC Properties, Inc., 969 F. Supp. 1150, 1159 (S.D. Ind. 1997) (Barker, C.J.) (internal quotation marks and brackets omitted).  However, in certain situations a party's unclean hands can preclude the application of the doctrine of laches to its advantage.  "The notion of unclean hands working as a bar to the application of laches stems from the belief that an equitable defense, such as laches, cannot be used to reward a party's inequities or to defeat justice."

Hot Wax, Inc. v. Turtle Wax, Inc., 191 F.3d 813, 825 (7th Cir. 1999) (citing Precision Inst. Mfg. Co. v. Automotive Maintenance Mach. Co., 324 U.S. 806, 814 (1945) (explaining unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief")).

In this case, Evenflo's "unclean hands" bar the application of the doctrine of laches to IMMI's post-2000 claims. Evenflo's laches claim is based on IMMI's failure to request an annual report for the year 1993, a report which Evenflo had itself failed to file, in violation of the Contract. Moreover, the 1993 report was the only report from the first four years that would have produced a royalty payment under IMMI's interpretation of the Contract and the only report from the first four years of the Contract that Evenflo failed to file. As a result, Evenflo is not free of blame for IMMI's failure to demand payment in 1993 and, therefore, we decline to reward Evenflo's breach of contract, and arguably duplicitous conduct, through the application of the doctrine of laches. Accordingly, we conclude IMMI's post-2000 claims are not barred by the doctrine of laches.

## Conclusion

For the foregoing reasons, we conclude that the Indiana statute of limitations bars IMMI's claims for alleged royalties from the year 1993; however, IMMI's claims for alleged royalties post-2000 are not barred by the doctrine of laches. Finally, we determine that the Licensing Agreement between IMMI and Evenflo contains a latent ambiguity which must be resolved by a jury as a question of fact. Accordingly, we DENY Plaintiff's Motion for Summary Judgment; GRANT Defendant's Motion for

Summary Judgment only as to IMMI's claim for royalties for the year 1993, and

<u>DENY</u> Defendant's Motion for Summary Judgment as to all other claims by IMMI.  IT IS

SO ORDERED.


Date: November 22, 2005

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copy To:
Mary Jane Frisby
BARNES & THORNBURG
mfrisby@btlaw.com

Spencer Patrick Goodson
BARNES & THORNBURG LLP
sgoodson@btlaw.com

Donald E. Knebel
BARNES & THORNBURG LLP
donald.knebel@btlaw.com

Nicholas C. Pappas
LOCKE REYNOLDS LLP
npappas@locke.com

Joel E. Tragesser
LOCKE REYNOLDS LLP
jtragesser@locke.com